UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE   DIVISION

| | |
|---|---|
| Alexander | Civil Action No. 16-00470 |
| versus | Judge Carol B. Whitehurst |
| Neustrom, et al | By Consent of the Parties |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by defendants, Michael Neustrom, individually and in his Official Capacity as Sheriff of Lafayette Parish, John Bernard and Sandy Riviere, individually and in their official capacities as deputies for the Lafayette Parish Sheriff's Office ("LPSO") [Rec. Doc. 8], a Memorandum in Opposition filed by Plaintiff, Kenward Alexander, Jr., [Rec. Doc. 30], and Defendants' Reply thereto [Rec. Doc. 44].  For the following reasons, the Motion will be denied.

*I.  Background*

This action is brought by Plaintiff, Kenward Alexander, pursuant to 42 U.S.C. §§ 1983, the Eighth and Fourteenth Amendments and the laws of Louisiana against Michael Neustrom, individually and in his Official Capacity as Sheriff of Lafayette Parish (Sheriff Neustrom"), John Bernard and Sandy Riviere, individually and in their official capacities as deputies for the LPSO ("Deputies"), as well as "Jane Doe" and

"John Doe".[1]

Plaintiff's Affidavit and his First Supplemental And Amended Petition, *R. 30-2, 32*, provides the following allegations:

Plaintiff was a pretrial detainee in the Lafayette Parish Correctional Center ("LPCC"), which is operated and staffed by the Sheriff's Department of Lafayette Parish. Plaintiff was held in the section known as the "Annex" which included a common area shared with other prisoners, including known violent convicts. One such convicted prisoner was Cody Fruge. On March 18, 2015, Plaintiff was threatened by a group of inmates with physical violence and one attempted to strike him. Deputies Bernard and Riviere entered the area, detained the inmate who attempted to strike Plaintiff and led him out. Plaintiff advised the Deputies that there were other remaining inmates who were also attempting to harm him. Deputy Bernard instructed Plaintiff to re-enter the area and get his personal belongings. Deputies Bernard and Riviere knowingly failed to accompany Plaintiff back into the confinement area for him to accomplish this instruction and to protect him from serious danger. Instead, the Deputies opened the door to the Annex and closed it behind Plaintiff despite being advised of the imminent threat of harm he faced.

Upon re-entering the area, as Plaintiff quickly attempted to get his personal

---

[1] Plaintiff also named health providers at the LPSO including, Toree Roy and Quinceyetta Hamilton, Ian Duplantis, Cynthia Landry and Daneisha Marks. *R. 32*.

belongings, he was attacked by inmate Cody Fruge and struck twice in the face causing injuries to his jaw, including a fracture. Plaintiff was taken to University Hospitals and Clinic ("UHC") where he was treated and released to Defendants. The providers at UHC instructed Defendants that Plaintiff needed to be seen within 1 week [or by March 25th] in order for his jaw fracture to heal properly.

Despite the severity of his injuries and knowledge of same through UHC, complaints made by Plaintiff, as well as his medical records, Defendants and the medical personnel employed by Sheriff Neustrum, showed deliberate indifference, delayed and/or failed to provide Plaintiff with prompt and necessary medical care and attention and pain relief medications, and failed to return him to UHC for timely treatment of his fractured jaw until April 14, 2015, nearly one month after the attack. This delay resulted in Plaintiff's jaw healing improperly and requiring a surgical procedure which otherwise would have been unnecessary had Defendants taken proper action for Plaintiff to be examined by the specialist weeks earlier as instructed.

On April 14, 2015, Plaintiff was referred to Perkins Surgery Center in Baton Rouge, Louisiana for treatment with a specialist. On June 22, 2015, the surgery caused by Defendants' delay and neglect was performed on his jaw at Our Lady of the Lake Hospital ("OLOL"). Pursuant to the provider's instructions, "d/c to prison, f/u 1 wk," Plaintiff was to return to OLOL/LSU Perkins one week after the June 22

surgery for an adjustment to the instrumentation that had been placed in his jaw. The timely adjustment was necessary in order for the healing of his jaw to be proper.

Despite the severity of his injuries and knowledge of same through the UHC instructions, complaints made by Plaintiff, and his medical records, Defendants and the medical care personnel employed by Sheriff Neustrum delayed and/or failed to provide an appointment for the necessary adjustment after the surgery until July 16, 2015—24 days later. This delay was again with deliberate indifference.

As a result of this second delay, Plaintiff again suffered damages both past and future. Plaintiff's jaw has not healed properly, he has for long periods of time been unable to chew food, he has suffered from pain, and he now does not have a jaw which functions properly or which allows him to fully close same in a normal manner. This has impeded and damaged Plaintiff's health, speech and mental and physical well being. Plaintiff will require future medical treatment and expenditures to correct that which resulted due to Defendants' [deliberate indifference and] neglect.

Plaintiff filed this action in the Fifteenth Judicial Court, Lafayette Parish, Lafayette, Louisiana on March 15, 2016. On April 7, 2016, Defendants removed the case to this Court under the Court's federal question and supplemental jurisdiction. Defendants answered Plaintiff's original Petition For Damages on April 14, 2016, and five days later, on April 19, 2016, Defendants filed the Motion at bar asserting that this action should be dismissed with prejudice in its entirety.

Plaintiff filed a Motion to Compel on June 6, 2016, contending that Defendants' responses to his discovery requests were "primarily objections" and failed to provide critical information necessary to oppose the motion for summary judgment. *R. 18*. The Court conducted a telephone conference with the parties on June 20, 2016 and entered an Order denying Defendants' Motion For Summary Judgment without prejudice as premature, *except* for those claims related to the issue of qualified immunity.[2] *R. 27, 28*.

In his Opposition Memorandum, Plaintiff asserts that he was precluded from any discovery of facts and information related to Defendants' practices, policies and past similar incidents when his Motion To Compel was denied on June 6, 2016. Thus, Plaintiff maintains he was denied the opportunity to discover and address the factual reasonableness and the facts showing the deliberate indifference of Defendants' actions such as poor training, deficient policies, and knowledge of prior similar incidents.

## *II. Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

---

[2] The Court will not consider any facts which are not related to qualified immunity in Defendants' "Statement of Undisputed Material Facts."

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir.1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir.1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.2007).

### *III. Law And Analysis*

Plaintiff asserts Section 1983 claims against Sheriff Neustrom and Deputies Bernard and Riviere in their individual capacities. In their Motion, Defendants assert qualified immunity as to Plaintiff's claims for: (1) Failure to provide adequate medical care; (2) Failure to protect; and, (3) Inadequate classification or housing. Although Sheriff Neustrom was not personally involved in the events surrounding the events complained of and Plaintiff does not contend that Deputy Bernard or Deputy Riviere had control over medical decisions or medical personnel, Defendants state that "the plaintiff's allegations against the defendants are accepted at [*sic*] true for the limited purpose of this motion." Thus, the Court will consider Plaintiff's claims of deliberate indifference against all Defendants and will determine whether or not the prongs of qualified immunity apply as to each of Plaintiff's claims.

### *A. Qualified Immunity*

"The doctrine of qualified immunity protects public officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir.2011) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). To determine whether a public official is entitled to qualified immunity, we inquire: "(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was 'clearly established'

at the time of the defendant's alleged misconduct." *Id*. (citing *Pearson*, 555 U.S. at 230–33). A pretrial detainee's due process rights are at least as great as the Eighth Amendment protections available to a convicted prisoner.... [T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement. *Jacobs v. W. Feliciana Sherif's Dept.*, 228 F.3d 388, 393 (5th Cir.2000).

As to the second element: (1) the housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification, *Pembroke v. Wood County*, 981 F.2d 225, 228 (5th Cir.1993); (2) "it has long been clearly established that a prison guard violates the [Fourteenth] Amendment by causing an inmate to be assaulted," *Schreane v. Beemon*, 575 Fed.Appx. 486, 491 (5th Cir. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)("gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective")); *Irving v. Dormire*, 519 F.3d 441, 447–48 (8th Cir.2008) (denying qualified immunity where prison guards opened cell doors so as to allow a prisoner to attack the plaintiff); and, (3) A pretrial detainee's right to medical care is violated if "an officer acts with deliberate indifference to a substantial risk of serious medical harm and resulting injuries." *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir.2003).

Thus, Defendants would not be entitled to qualified immunity if Plaintiff

alleges facts showing that Defendants were deliberately indifferent to the substantial risk of harm Plaintiff faced upon: (1) being housed with convicted prisoners; (2) ordered to return to the Annex with knowledge that he had been threatened by a group of prisoners, and; (3) was not timely examined by a specialist for his fractured jaw knowing that same was medically "urgent."

### B. Plaintiff's Constitutional Claims

"Whenever the district court denies an official's motion for summary judgment predicated upon qualified immunity, the district court can be thought of as making two distinct determinations, even if only implicitly." *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir.2004) (en banc). "First, the district court decides that a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law. Second, the court decides that a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." *Id*.

Plaintiff alleges that his constitutional rights were violated by Defendants: (1) ordering that he return unaccompanied to the Annex when they knew a group of convicted prisoners had threatened and attempted to assault him; and, (2) failing to provide him with timely medical treatment. "The appropriate standard to apply in analyzing constitutional challenges brought by pretrial detainees depends on whether the alleged unconstitutional conduct is a 'condition of confinement' or 'episodic act or omission.'" *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir.2009) (quoting *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997) (en banc)). As each of Plaintiff's claims

constitutes "a particular act or omission of one or more officials," this action is properly analyzed as an "episodic act or omission" case. *See Scott*, 114 F.3d at 53.

The Court applies the "deliberate indifference" standard in episodic act or omission cases. *Tamez*, 589 F.3d at 769. Under that standard, Plaintiff must establish that Defendants acted with subjective deliberate indifference to these claims. *Id*. at 770. To show subjective deliberate indifference, Plaintiff must present evidence: (1) that Defendants had "subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn;" (2) that Defendants "actually drew that inference;" and (3) that Defendants' response to the risk indicates that they "subjectively intended that harm to occur." *Id*.

To impose liability on a defendant in his individual capacity in an episodic-act-or-omission case, a pretrial detainee must establish that the defendant acted with subjective deliberate indifference. *Id*. A person acts with subjective indifference if (1) "he knows that an inmate faces a substantial risk of serious bodily harm," and (2) "he disregards that risk by failing to take reasonable measures to abate it." *Anderson v. Dallas Cty., Tex*., 286 Fed.Appx 850, 860 (5th Cir. 2008).

Plaintiff named Sheriff Neustrom as a defendant in this action. "[Louisiana] law divides responsibility for parish jails. The parishes are charged with their jails' physical maintenance. *See* La.Rev.Stat. § 15:702. However, the duty to administer and operate the jails falls on the sheriff of each parish. *See* La.Rev.Stat. § 15:704; *see also Magee v. St. Tammany Par. Jail*, 2010 WL 1424404, at *4 (E.D.La. Mar. 5,

2010)." *Bouchereau v. Gautreaux*, 2015 WL 5321285, at *14 (M.D.La., 2015). "Confining authorities, such as a sheriff in charge of a parish jail, still maintain a legal obligation to provide medical treatment for prisoners. The standard of care imposed upon the confining authority in providing for the medical needs of prisoners is that those services be adequate and reasonable. *Id.* (citing *Landry v. East Baton Rouge Parish Sheriff's Office*, 2014–0733, 2015 WL 1033767, at *2 (La.App. 1 Cir. 3/9/15).

Plaintiff's claims against Sheriff Neustrom in his individual capacity revolve around allegations of the failure to properly train and supervise, as well as policies to separate dangerous prisoners from detainees, to protect against serious harm and injury and to provide prompt medical treatment and transportation to appointments. *R. 32, ¶¶ 20–27*. A supervisory official may be held liable under section 1983 only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir.2008). "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir.2011). A supervisor may be liable for failure to supervise or train if "(1) the supervisor either failed to supervise or train the subordinate official;

11

(2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Id.*

### 1. Prisoner Classification

Defendants assert that Plaintiff states a claim for "constitutionally inadequate classification or housing assignments for failing to detain [him] separate and apart from 'violent convicts.' " As provided above, the Fifth Circuit has recognized that the housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification. *Pembroke v. Wood County*, 981 F.2d 225, 228 (5th Cir.1993). It has also recognized that some circumstances will permit the housing of pretrial detainees with convicted inmates. *Jones v. Diamond*, 636 F.2d 1364 (5th Cir.1981), overruled on other grounds *International, Woodworkers v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir.1986). Significantly, the classification of inmates is an administrative function of the prison. *Jones*, 636 F.2d at 1376. Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir.1990). "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." *Woods v. Edwards*, 51 F.3d 577, 581–82 (5th Cir.1995).

Plaintiff complains that he was housed with or near convicted inmates while

he was a pretrial detainee and that he was attacked by one of those inmates as a result. As a pretrial detainee, such a claim arises under the Due Process Clause of the Fourteenth Amendment, which—like the Eighth Amendment—places a duty on the State to protect against harm to persons in its confinement. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996) (en banc).

In his Opposition Memorandum, Plaintiff argues generally that "prison officials have a duty to protect prisoners from violence at the hands of other prisons." Plaintiff, however, make no reference to any administrative decision related to his confinement. Rather, Plaintiff's only reference to his confinement with convicted prisoners is in his failure to protect claim and related argument as to Defendants' actions and the circumstances surrounding the attempted and actual assault against him. Moreover, at the hearing on oral argument, neither counsel for Defendants nor Plaintiff made any reference to an unconstitutional housing claim—arguing only the failure to protect and the medical care claims. The Court finds that because Plaintiff has not alleged an unconstitutional housing claim, Defendants' motion is moot in that regard.

## *2. Failure To Protect*

Plaintiff complains that while he was a pretrial detainee, Defendants failed to protect him from violence at the hands of a fellow inmate—Cody Fruge. Here, Deputy Bernard and Deputy Riviere knew that an attempt to assault Plaintiff had occurred. Plaintiff alleges that he also told Bernard and Riviere he had been further threaten by a group of inmates. Deputies Bernard and Riviere removed the inmate

from the Annex who attempted to assault Plaintiff and were in the process of moving Plaintiff from the Annex to different housing. Before relocating Plaintiff, however, Plaintiff alleges that Bernard and Riviere instructed him to go back into the Annex for his personal belongings. Bernard and Riviere did not accompany Plaintiff into the Annex and closed the door behind him. Once Plaintiff re-entered the Annex without protection from the Bernard and Riviere he was violently assaulted by one of the members of the inmates who had threatened him—Cody Fruge.

Defendants argue that Plaintiff's assertion that he informed Deputies Bernard and Riviere that a group of inmates had threatened to harm him, as well as his "brief" return to the Annex, are insufficient to demonstrate that Defendants were consciously aware that Plaintiff faced a substantial risk of serious harm and they are entitled to qualified immunity. Defendants cite *Davidson v. Cannon*, 474 U.S. 344 (1986), in support of their position that "a mistaken belief that a threat is not 'sufficiently serious' does not demonstrate deliberate indifference by the jail official." *Id.* In *Cannon* the jail official received a note from the plaintiff, an inmate, that he was being threatened by a fellow inmate. The official did not act on the note and simply forgot about it. The facts of *Cannon* are significantly distinguishable from the facts in this case. Here, the Deputies knew of the substantial risk of harm to Plaintiff by the group of inmates, one of whom had attempted to assault him. Despite this knowledge, the Deputies deliberately sent him back into the Annex alone and unprotected.

There is a clearly established right to be free from unnecessary beatings in

prison. *Hudson v. McMillan*, 503 U.S. 1, 9–10(1992). There is likewise a clearly established duty for prison guards to care for the health and safety of inmates. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Based on Plaintiff's Affidavit regarding the facts of his attack and the actions of Deputies Bernard and Riviere, there is a genuine issue of material fact as to whether or not Defendants were deliberately indifferent to Plaintiff's right to be safe from harm.

Plaintiff alleges that Sheriff Neustrom failed to properly train and supervise Deputies Bernard and Riviere and failed to enact policies and procedures to separate dangerous prisoners from detainees in known risk situations in order to protect detainees against serious harm and injury. Plaintiff must show that Sheriff Neustrom, as the supervisor, either failed to supervise or train Deputies Bernard and Riviere and that a causal link exists between the failure to train or supervise and the violation of Plaintiff's rights. Here, the circumstances surrounding Plaintiff's assault, including the Deputies' actions and their alleged knowledge creates a material issue as to Sheriff Neustrom's deliberate indifference regarding the failure to train or supervise and/or his policies and procedures related to protection of detainees from known threats by convicted prisoners.

### 3. *Medical Care*

Plaintiff asserts his Constitutional rights were violated when his serious health needs were met with deliberate indifference. Under the "deliberate indifference" standard, a plaintiff must establish that the defendants acted with subjective deliberate

indifference to his need for medical care. *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir.2011). To show that level of indifference, a plaintiff must present evidence that: (1) the defendant had "subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn;" (2) the defendant actually drew that inference; and (3) the defendant's response to the risk indicates that he subjectively intended that the harm occur. *Id*. Deliberate indifference thus requires actual knowledge and conscious disregard of the risk of harm to the plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious. *Id*. at 825. Furthermore, the law was clear that mere delay in receiving care is not in and of itself a constitutional violation but rather "can only constitute an Eighth [or Fourteenth] Amendment violation if there has been deliberate indifference [that] results in substantial harm." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir.2006). The evidence confirms that Plaintiff suffered substantial harm in connection with the delay in his fractured jaw examination by a specialist.

    Plaintiff contends that despite Defendants' knowledge, by and through its medical personnel, of UHC's directive that he be referred "ASAP" for examination by an oral myofacial specialist, Defendants knowingly and deliberately failed to transport him to an ENT Clinic until twenty-seven (27) days later on April 14, 2015. Plaintiff further contends that this delay caused him to require surgical intervention to repair his jaw (rather than merely setting the jaw). After the surgery was performed

on June 22, 2015, the provider instructed that Plaintiff be examined within one week for post-surgery adjustment of his jaw. Plaintiff states that Defendants' again failed to transport him to his July 2, 2015 appointment and his adjustment was not made until July 16, 2015—24 days after his surgery. Plaintiff asserts that the post-surgery delays have necessitated a second surgery to correct his jaw and that he remains unable to close his mouth. *R. 30, p. 16.*

Defendants contend that Sheriff Neustrom and the LPSO personnel, including Deputy Bernard, Deputy Riviere, John Doe and Jane Doe, acted reasonably in addressing Plaintiff's medical needs and are entitled to qualified immunity. They assert that as a result of UHC's March 18, 2015 recommendation that Plaintiff be seen in one week after his jaw was fractured, Defendants' submitted an "urgent" consult form to LSU Health Systems stating "needs f/u ASAP" the next day. *R. 8, LPSO Medical Records.* They further assert that despite the LPSO's "urgent" consult request, UHC failed to follow its own recommendations and scheduled Alexander's initial follow-up 27 days after the incident. *Id.* As to the 24-day delay for his post-surgery adjustment, Defendants again blame UHC's scheduling. In support of their position that their failure to take any action to assure that Plaintiff was seen within "one week" in both instances did not constitute deliberate indifference, Defendants argue that they had "no authority or control over UHC's scheduling department."[3]

---

[3] Contrary to Defendants' position that they had no authority or control over UHC's scheduling, the record provides that after Plaintiff's unexplained missed appointment and LPSO's confusion as to appointments in July 2015, the "nurse requested that LPSO be provided

A cause of action for deliberate indifference to a prisoner's medical needs may be maintained if there is a delay in access to medical care that results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993). Here, the undisputed facts establish that Defendants knew that a substantial risk of serious harm could occur if Plaintiff was not examined by an ENT specialist within one week, i.e. Defendants' own "urgent" consult form. Yet, they failed to take any action what-so-ever, instead putting the blame on UHC's scheduling department.[4] Defendants' failure to assure that Plaintiff received medical treatment within the prescribed time period led to substantial harm, causing Plaintiff to undergo surgeries with extended and painful recoveries as well as jaw damage.

Plaintiff further alleges that Sheriff Neustrom failed to properly train and supervise Defendants and failed to provide adequate policies and procedural recourse to provide proper, timely and adequate medical attention to Plaintiff. In particular, Plaintiff alleges Sheriff Neustrom's policy of obtaining medical information, implementing medical instructions regarding injured detainees and following and fulfilling prescribed treatment was inadequate.

In the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation

---

with all follow-up recommendations to ensure that the LPCC clinician could review the request and the Department of Corrections could expedite approval for the appointment." *R. 8-2, p. 15.*

[4] At the motion hearing, Plaintiff argued that UHC contends the errors in scheduling were Defendants' responsibility.

of his constitutional rights has occurred as a result of the implementation of the sheriff's affirmative wrongful policies by his subordinates or where the sheriff wrongfully breaches an affirmative duty specially imposed upon him by state law. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir.1983). A causal connection may be established, for section 1983 purposes, where the constitutional deprivation and practices occur as a result of the implementation of the sheriff's affirmative wrongful policies by his subordinates, or where the sheriff wrongfully breaches an affirmative duty specially imposed upon him by state law, and as a result thereof, the complained of constitutional tort occurs. *Id.*

Defendants' actions of knowingly failing to assure that Plaintiff was timely examined by an ENT specialist after his jaw fracture and after the surgery, both of which caused Plaintiff to suffer substantial harm, creates a material issue as to whether Defendants' actions or inactions resulted from the Sheriff's wrongful failure to train his deputies in adequate medical care, supervise his facilities and personnel and/or discharge his supervisory duties over the jail and his officers, or that it was the result of an affirmative practice, custom, or policy instituted by the Sheriff.

### *IV. Conclusion*

On the present record, the Court finds there is a genuine dispute of material facts related to the elements of deliberate indifference and objective reasonableness as to Defendants' failure to protect and provide adequate medical care, including Plaintiff's supervisory-liability claim against Sheriff Neustrum. Plaintiff has therefore

negated Defendants' affirmative defense of qualified immunity at this summary-judgment stage. Accordingly, the Court will deny Defendants' Motion For Summary Judgment as to qualified immunity.

Thus done and signed this 6th day of September, 2016 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE